IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA PRUITT                          :

                                       :

    v.                                 :    Civil Action No. DKC 15-0458

                                       :

THE ALBA LAW GROUP, P.A., et al.       :

                                       :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this consumer case are: (1) a motion to dismiss filed by Defendants US Bank National Association ("US Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") (ECF No. 8); (2) a motion to dismiss filed by Defendant The Alba Law Group, P.A. ("Alba") (ECF No. 11); and (3) a motion to dismiss filed by Defendant JP Morgan Chase Bank, N.A. ("JP Morgan") (ECF No. 25). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions will be granted.

## I.   Background

### A.   Factual Background

The following facts are alleged in the amended complaint. On March 7, 2005, Wells Fargo provided a mortgage loan to Plaintiff Sandra Pruitt ("Plaintiff" or "Ms. Pruitt") that was evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of Trust") on certain real property

located at 1501 Deer Run Court, Mitchellville, Maryland ("the Property"). (ECF No. 7 ¶ 7). Ms. Pruitt defaulted on her loan, and foreclosure proceedings were initiated on November 8, 2011 in the Circuit Court for Prince George's County. (ECF No. 7 ¶ 9); *see also Geesing v. Sandra Pruitt*, Case No. CAE 11-31154. In about April 2012, before the Property was foreclosed on, Ms. Pruitt filed for bankruptcy. (ECF No. 7 ¶ 11). The attorneys from Alba were appointed as Substitute Trustees to foreclose on the Deed of Trust. (*Id.* ¶ 8).

Ms. Pruitt asserts that she made monthly mortgage payments to Wells Fargo and the bankruptcy trustee since the filing of her bankruptcy, but then, "[a]t the beckoning of Wells Fargo, [she] applied on numerous occasions for a loan modification." (ECF No. 7 ¶¶ 12-13). Wells Fargo denied Ms. Pruitt's request for a loan modification by letter dated September 12, 2014, a decision which she appealed. (*Id.* ¶¶ 14-15). By letter dated October 16, 2014, Wells Fargo informed Ms. Pruitt that her appeal would not be granted. (*Id.* ¶ 16). Although Ms. Pruitt does not attach the letter as an exhibit to her amended complaint, she states that it "apprised [her] of the short sale option and that Ms. Pruitt should call [Marsha Short, a Wells Fargo employee,] right away if she was interested in such an option." (*Id.*). Ms. Pruitt contends that she called Ms. Short to request information on the option to sell her home to avoid

2

foreclosure, but the calls went unanswered.   (*Id.* ¶¶ 17-18).
Plaintiff alleges that:

> Defendant Alba responded to one of Ms.
> Pruitt's letters to Wells Fargo.   Alba's
> Jason W. Mathers wrote a letter to Ms.
> Pruitt in which Alba provided a payoff quote
> and reinstatement quote.   The payoff quote
> and reinstatement quote was $320,367.70 and
> $63,893.85, respectively.    Both quotes
> attributed only $585.00 of the quoted amount
> as for attorney['s] fees and costs.   In
> fact, the actual amount of the quoted of
> amount that represented attorney fees and
> costs was at least $7,870.16 as of November
> 25, 2014.  Upon information and belief, the
> $7,870.16 or more in attorney['s] fees are
> unjust and represent costs not actually
> incurred or excessive of the true costs.

(*Id.* ¶ 19).

Plaintiff contends that three days before the scheduled foreclosure sale, Marsha Short answered her phone and "coldly advised Ms. Pruitt that she can submit documents for a short sale[,] but at this point there is no guarantee that the sale would be postponed for her to do a short-sale."  (*Id.* ¶ 20). According to Plaintiff, "Marsha Short claimed the foreclosure sale could not be postponed without the authorization of the investor, who Marsha identified as EMC."  (*Id.*).  Subsequently, Plaintiff allegedly represented to Ms. Short that "she could cure the default to stop the foreclosure," but requested that Wells Fargo "certify that it was the 'holder' and possessor of the original promissory note."  (*Id.* ¶ 21).  Marsha Short then

apparently informed Plaintiff that Wells Fargo did not have the original note, but held a copy.   Ms. Pruitt contends that subsequently she called Alba and spoke with an attorney, who told her that Alba also was not in possession of the original promissory note.  (*Id.* ¶ 22).

**B.   Procedural Background**

Plaintiff, proceeding *pro se*, filed this case in the Circuit Court for Prince George's County, but, when she filed an amended complaint, adding a federal claim and an additional defendant, the case was removed to this court.  (ECF No. 1). The first amended complaint asserts the following claims: (1) violations of the Truth in Lending Act ("TILA") by JP Morgan (count I); (2) violations of the Fair Debt Collection Practices Act ("FDCPA") by Alba (count II); (3) violations of the Maryland Consumer Debt Collection Act ("MCDCA") by all Defendants (count III); and (4) violations of the Maryland Consumer Protection Act ("MCPA") by Wells Fargo (count IV).   Plaintiff also requests a declaratory judgment (count V).

Defendants Wells Fargo and US Bank filed a motion to dismiss the amended complaint, and Alba filed a separate motion to dismiss.  (ECF Nos. 8 and 11).  Plaintiff was provided with a *Roseboro* notice (ECF No. 19), which advised her of the pendency of the motions to dismiss and her entitlement to respond within seventeen (17) days from the date of the letter.   *Roseboro v.*

*Garrison,* 528 F.2d 309, 310 (4ᵗʰ Cir. 1975) (holding that *pro se* plaintiffs should be given fair notice of the requirements of the summary judgment rule and advised of their right to file responsive material to a motion for summary judgment). Plaintiff filed an opposition (ECF No. 22), and Defendants Wells Fargo, US Bank, and Alba replied (ECF Nos. 23 and 24). Then, Defendant JP Morgan moved to dismiss. (ECF No. 25). Plaintiff was provided with a *Roseboro* notice (ECF No. 27), but she has not filed an opposition and the time for her to do so has long passed.

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4ᵗʰ Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

In addition, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings

drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002).

## III. Analysis

### A.   Plaintiff's MCDCA Claim

Plaintiff asserts an MCDCA claim against all Defendants. The amended complaint asserts that Defendants violated Section 14-202(8) of the MCDCA by (1) "[c]laiming and/or attempting to collect an inflated amount of the debt" and (2) "[a]ttempting to take and/or claiming a right to take plaintiff's property when the Defendants knew neither Wells Fargo nor Alba was entitled to enforce the Note or Deed of Trust." (ECF No. 7 ¶ 32(a)-(b)).

The MCDCA "prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt." *Stovall v. SunTrust Mortgage, Inc.*, No. RDB-10-2836, 2011 WL 4402680, at *9 (D.Md. Sept. 20, 2011). Pertinently, the statute provides that, in collecting or attempting to collect an alleged debt, a collector may not engage in various activities, including "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist. Md. Code Ann., Com. Law § 14-202(8). To plead a claim under the MCDCA, Plaintiff must set

forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so. *See Lewis v. McCabe, Weisberg, & Conway, LLC*, No. DKC 13-1561, 2014 WL 3845833, at *6 (D.Md. Aug. 4, 2014). The key to prevailing on a claim of MCDCA is to demonstrate that the defendant "acted with knowledge as to the *invalidity* of the debt." *Pugh v. Corelogic Credco, LLC*, No. DKC 13-1602, 2013 WL 5655705, at *4 (D.Md. Oct. 16, 2013) (citing *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D.Md. 2012) (emphasis in original) (citations omitted) (dismissing plaintiff's MCDCA claim for failure to demonstrate defendant's knowledge).

### 1. Plaintiff's Claim Regarding Inflated Debt

Plaintiff's assertion that Defendants attempted to collect an "inflated amount of the debt" apparently concerns her challenge to the amount of attorney's fees identified in a payoff quote and reinstatement quote from Alba. (ECF No. 7 ¶ 32(a)). She appears to argue that attorney's fees included within the quoted subtotal labeled "Corporate Advance" "are unjust and represent costs not actually incurred or excessive of the true costs." (*Id.* ¶ 19). Plaintiff alleges that, although both the payoff quote and reinstatement quote expressly attribute $585 to attorney's fees, "the actual amount of the

quoted amount that represent[s] attorney['s] fees and costs [is] at least $7,870.16 as of November 25, 2014." (*Id.*).

Defendants misapprehend the nature of Plaintiff's argument. According to Defendants Wells Fargo and US Bank, "Plaintiff challenges that the amount identified in the quotes [is] less than what she perceived to be the actual amount of fees and thus cannot be actionable here." (ECF No. 8-1, at 7).  Defendants' reasoning proceeds thusly: Plaintiff's own allegations belie her assertion that Defendants attempted to collect more than what was owed because she contends that the actual amount of attorney's fees was *more* than what purportedly was represented in the payoff quote and reinstatement quote.  This overly simplistic recital of Plaintiff's argument evidences a cursory review of her claim, as does Defendants' description of Plaintiff's allegations as "vague and self-contradictory."[1]  (ECF No. 11-1, at 4).  She clarifies in her opposition that "Alba quoted a total amount due that included $7,870.16 attributable

---

[1]  Plaintiff asserts in her amended complaint that "the actual amount of the quoted amount [of the Corporate Advance subtotal] that represent[s] attorney['s] fees and costs [is] at least $7,870.16."  (ECF No. 7 ¶ 19).  She does not, as Defendants argue, "challenge[] that the amount identified in the quotes [is] less than what she perceived to be the actual amount of fees."  (ECF No. 8-1, at 7).  Instead, Plaintiff alleges that, because the quotes each attributed $585 of the total to attorney's fees and costs, the additional amount of the Corporate Advance subtotal attributable to attorney's fees and costs is "unjust and represent[s] costs not actually incurred or excessive of the true costs."  (ECF No. 7 ¶ 19).

to attorney['s] fees and costs but hid that amount under Corporate Advance and then falsely represented that the attorney['s] fees and costs were only $585."[2]   (ECF No. 22, at 2).   Although lacking in clarity, Plaintiff appears at bottom to contend that Defendants violated the MCDCA by masking attorney's fees and costs in her quotes under a separate heading labeled Corporate Advance.

Grasping Plaintiff's argument does not, however, reveal why she finds the fees to be objectionable, unjust, or excessive of true costs.   She simply alleges in her amended complaint that, "[u]pon information and belief, the $7,870.16 or more in attorney['s] fees are unjust and represent costs not actually incurred or excessive of the true costs."   (ECF No. 7 ¶ 19). Critically, she provides no basis and pleads no facts supporting her information and belief.   Plaintiff advances no argument as

---

[2] Attached to Plaintiff's opposition is an excerpt from her Wells Fargo Customer Account Activity Statement (the "Activity Statement") that provides a breakdown of Plaintiff's outstanding Corporate Advance balance.   (ECF No. 22-1).   For calendar year 2010, the Activity Statement shows that Wells Fargo assessed $3,343.76 in attorney's fees and costs to Plaintiff's Corporate Advance balance.   (*Id.*).   Although Plaintiff does not provide an activity statement for the other relevant years, she has apparently calculated that, of the entire Corporate Advance subtotal of $10,847.74, $7,870.16 is "attributable to fees or costs involving the attorney."   (ECF No. 22).   Plaintiff bases her claim on the fact that the Corporate Advance total is separate from the "Attorney Fees and Costs" subtotal that amounts to $585 of both the payoff quote and reinstatement quote.   This separation—and the fact that legal fees and costs appear in both subtotals—leads Plaintiff to the conclusion that the quoted amount is unjust and excessive.

to why this practice is actionable aside from suggesting that attorney's fees and costs billed to the Corporate Advance balance and separate from Attorney Fees and Costs are, in a sense, *per se* illegitimate.  To the extent Plaintiff argues that legal fees and costs included within the Corporate Advance balance of her payoff quote and reinstatement quote are unjust, unearned, or excessive of true costs, she has not stated a claim.  Therefore, unless and until Plaintiff can make out a claim and satisfy the pleading standard, her claim must be dismissed.

To the extent that the allegations and facts of Plaintiff's opposition differ from those in her amended complaint, the court must look to the sufficiency of her amended complaint. Plaintiff may not amend her complaint again through her opposition.  It is well settled law that a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Bey v. Shapiro Brown & Alt, LLP*, 997 F.Supp.2d 310, 318 (D.Md.) *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (citing *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1063 (4th Cir. 1984) (holding that plaintiff "cannot introduce new allegations or new facts" in opposition to a motion to dismiss)).  However, even if the facts set forth in Plaintiff's opposition were included in her amended complaint, there would remain an insufficient factual basis to survive Defendants' motion to dismiss.  The Activity Statement attached

to Plaintiff's opposition establishes where and how she arrived
at the dollar figures referenced in her amended complaint, but
it does nothing to augment the factual foundation for her MCDCA
claim.  Her bare suspicions are not enough, as federal pleading
rules "do[] not unlock the doors of discovery for a plaintiff
armed with nothing more than conclusions." *Iqbal*, 556 U.S. at
678-79.   Plaintiff's   contention   in   her   opposition   that
Defendants "hid [fees] under Corporate Advance and then falsely
represented that the attorney['s] fees and costs were only $585"
(ECF No. 22, at 2) remains a "naked assertion[] devoid of
further factual enhancement" and insufficient to show actionable
misconduct by Defendants. *Iqbal*, 556 U.S. at 678 (citations and
internal quotation marks omitted).   Accordingly, even if the
information provided in Plaintiff's opposition were pleaded in
her amended complaint, it would be nevertheless insufficient to
survive Defendants' motion to dismiss.

Any attempt by Plaintiff to assert an MCDCA claim is
unavailing for the additional reason that, even assuming she
adequately raised a claim under § 14-202(8) challenging the
validity of the underlying debt, such a claim is not viable.
Judge Williams' analysis is instructive:

> The MCDCA, and in particular § 14-202, is
> meant to proscribe certain methods of debt
> collection and is not a mechanism for
> attacking the validity of the debt itself.
> The Act proscribes certain conduct, (1)

through (9), by a collector in "collecting or attempting to collect an *alleged debt* . . . ." Md. Code Ann., Com. Law § 14-202 (emphasis added). In other words, the Act focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid. Plaintiff contends that she is entitled to relief under paragraph (8) of the provision based on Defendants' knowledge that the underlying debt did not exist. Paragraph (8) provides that a collector, in attempting to collect an alleged debt, may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id*. § 14-202(8). Section [] 14-202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain methods of debt collection rather than the debt itself.

This interpretation is strengthened when considering that the other eight practices proscribed by the statute refer to specific coercive or abusive methods of enforcing a debt. Examples include using obscene or grossly abusive language in communicating with the debtor or a relative, § 14-202(7), using or threatening to use force or violence, § 14-202(1), or otherwise communicating with the debtor in a harassing or abusive manner, § 14-202(6). Section 14-202(8) makes sense within the context of the other proscribed practices only if it is also read to proscribe certain methods of debt collection, "such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt," rather than collection of the debt itself. *See Porter v. Hill*, 314 Or. 86, 838 P.2d 45, 48-49 (1992) (analyzing a similar statute). Accordingly, because the MCDCA provides no basis for liability in contesting the

> underlying debt, Plaintiff's argument must
> fail.

*Fontell v. Hassett*, 870 F.Supp.2d 395, 405-06 (D.Md. 2012).  An MCDCA claim properly challenges certain proscribed conduct, but it is not a mechanism for attacking the validity of the debt itself.  Here, insofar as Plaintiff contests the legitimacy of the fees and costs assessed in her Corporate Advance balance, her MCDCA claim must fail.

**2.   Defendants' Right to Enforce the Note or Deed of Trust**

Plaintiff also bases her MCDCA claim on the argument that Defendants did not possess the original Note and thus were not "holders" and authorized to enforce the lien on the Property through foreclosure.  Plaintiff asserts in her opposition that "Alba and Wells Fargo did not have a right to take [her] property because neither could enforce the Note.  . . . Similarly, Plaintiff[] [alleges] . . . that Wells Fargo could not declare the Note in default because it is not the 'holder' of the Note and without standing to enforce the Note." (ECF No. 22, at 3-4).  Plaintiff's arguments misconstrue the law.  "Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its invalidity." *Lembach v. Bierman*, 528 F.App'x 297, 304 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc.*,

14

No. DKC 2004-4059, 2005 WL 2216242, at *11 (D.Md. Sept. 12, 2005)).   The United States Court of Appeals for the Fourth Circuit explained in *Lembach*, 528 F.Appx at 304-05:

> The MCDCA allows recovery for abusive practices, or when the debt collector seeks to collect on a debt when he or she knows (or should know) that he or she does not have a right to do so.   Here, the Lembachs dispute only the signatures on the documents, and *the MCDCA does not allow for recovery for an error in the process of collecting this legitimate and undisputed debt*.

(emphasis added).

Crediting Plaintiff's allegations that Defendants were not in actual possession of the original Note does not plead an MCDCA violation.   Md. Code Ann., Com. Law § 3-301 provides avenues for holders, non-holders, persons *not* in possession, and those in wrongful possession to enforce otherwise valid instruments.   Specifically, § 3-301 states:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418(d).   A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Even assuming the amended complaint sufficiently alleges that Defendants were not holders, it does not allege plausibly that

15

Defendants knew, or were deliberately indifferent to, the fact that they did not possess the right to enforce the Note. Nowhere in her amended complaint or opposition to Defendants' motions does Plaintiff dispute that she owed the debt after she defaulted on her mortgage. *See, e.g., Bey*, 997 F.Supp.2d at 318-19 ("Plaintiff's MCDCA claim must be dismissed because his allegations attack only the endorsements to the Note and do not challenge Defendants' underlying right to collect the debt."). Indeed, Plaintiff asserts that she attempted to obtain a loan modification from Wells Fargo after she defaulted. (ECF No. 7 ¶ 13). The analysis from *Marchese v. JP Morgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 464 (D.Md. 2013), regarding an MCDCA claim applies here:

> . . . Mr. Marchese concedes that he was in default on his mortgage payments. [] Thus, Chase had the right to foreclose on the Property.
>
> Although Mr. Marchese takes issue with the methods used by the Substitute Trustees on Chase's behalf, including alleged missing signatures and improper notarizations, *the MCDCA only allows for recovery against creditors that attempt to collect debts when there is no right to do so.* It does not, as Mr. Marchese contends, allow for recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts. *See Stewart v. Bierman*, 859 F.Supp.2d 754, 770 (D.Md. 2012) (finding that plaintiff's MCDCA claim failed where plaintiff took issue with the method used by defendants to attach signatures to foreclosure documents).

> . . . As this Court decided in *Stovall v.*
> *SunTrust Mortg., Inc.*, No. RDB-10-2836, 2011
> WL 4402680 (D.Md. Sept. 20, 2011), the
> alleged filing of improper foreclosure
> documents does not change the fact that *the*
> *right to foreclose arises when the property*
> *owner defaults on the mortgage*. *Id.* at *9.
> Thus, Chase's right to foreclose came about
> when Mr. Marchese defaulted on his mortgage
> prior to the Foreclosure Action in June
> 2009.  While Chase may have employed
> shortcuts in the initiation and docketing of
> foreclosure proceedings against Mr.
> Marchese, the documents did not contain
> false information regarding the underlying
> debt.

(emphases added).  Plaintiff has not alleged any facts

supporting a determination that Defendants lacked the right to

collect on her debt.  That is, nowhere in her amended complaint

or opposition does Plaintiff contend that she did not owe the

debt upon her default.

   In this case, it is undisputed that Plaintiff defaulted on

her mortgage loan before Defendants initiated foreclosure

proceedings.  Accordingly, Defendants enforced a valid right and

there is no basis for liability under Section 14-202(8).  Based

on the foregoing, Plaintiff's MCDCA claims will be dismissed.

   **3.  Declaratory Judgment**

   Plaintiff's amended complaint includes a claim for a

declaratory judgment based on her contention that Defendants

must be in possession of the original promissory note in order

to enforce it.  She requests that the court "find that the

Defendants must be a 'holder' of the original promissory note in order to enforce the power of sale provision in the Deed of Trust." (ECF No. 7 ¶ 45). For the reasons explained above, *see supra* Part III.A.2, the specific declaration sought by Plaintiff contravenes applicable law and will not be entered.

Although Defendants seek dismissal of Plaintiff's claims under Rule 12(b)(6), resolution of her claim for declaratory relief is not properly decided pursuant to Rule 12(b)(6) review. As is evident from the amended complaint and the parties' briefs, there is an actual, ongoing controversy between them as to whether Defendants must be in possession of the original promissory note in order to enforce the Deed of Trust. The parties disagree as to how this controversy should be resolved and, in such circumstances, a motion to dismiss for failure to state a claim is not the appropriate means of resolving a claim for declaratory relief:

> Where a bill of complaint shows a subject matter that is within contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so,

> even though the plaintiff may be on the
> losing side of the dispute, if he states the
> existence of a controversy which should be
> settled, he states a cause of suit for a
> declaratory decree.

*Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.,* No. DKC 09-0100,
2011 WL 856374, at *18 (D.Md. Mar. 9, 2011) (quoting *120 W.
Fayette St., LLLP v. Mayor & City Council of Baltimore City,* 413
Md. 309, 355-56 (2010)); *see also, e.g.,* 22A Am.Jur.2d
Declaratory Judgments § 228 (2015 supp.) ("A motion to dismiss
is seldom an appropriate pleading in actions for declaratory
judgments, and such motions will not be allowed simply because
the plaintiff may not be able to prevail.").

Therefore, with respect to Plaintiff's claim for
declaratory relief, the parties' motions will be construed as
competing cross-motions for a declaration in their favor as to
whether Defendants must be in possession of the Note in order to
enforce the Deed of Trust. *See McKinsey & Co ., Inc. v. Olympia
& York 245 Park Ave. Co.,* 433 N.Y.S.2d 802, 802 (N.Y.App.Div.
1980) ("In the absence of a holding that a dispute is not ripe
for adjudication, a court should not dismiss the complaint in a
declaratory judgment action, but should declare the parties'
rights."); *Diamond v. Chase Bank*, No. DKC-11-0907, 2011 WL
3667282, at *5 (D.Md. Aug. 19, 2011) (construing a defendant's
Rule 12(b)(6) motion to dismiss the plaintiff's declaratory
judgment claim as a motion for a declaration in its favor).

For the reasons above and because the declaration sought by Plaintiff contravenes applicable law, *see supra* Part III.A.2, the declaratory relief claimed by Plaintiff will not be issued. Instead, a declaration that Defendants need not be a "holder" of the original promissory note in order to enforce the power of sale provision in the Deed of Trust will be entered.

## B.   Plaintiff's MCPA Claim

Plaintiff also asserts an MCPA claim. Although she references "Defendants" in her amended complaint, the allegations as to the MCPA claim appear to relate only to Wells Fargo. The MCPA prohibits "unfair or deceptive trade practices" in the "extension of consumer credit" or "[t]he collection of consumer debts." Md. Code Ann., Com. Law § 13-303(4)-(5). To state a claim under the MCPA, Plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [her] actual injury." *Stewart*, 859 F.Supp.2d at 768 (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)). Under the MCPA, an "unfair or deceptive" trade practice includes "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers."[3] Md. Code Ann.,

---

[3] The MCPA establishes that, by definition, the violation of several other enumerated Maryland statutes, including the MCDCA, constitutes unfair or deceptive trade practices proscribed by the MCPA. *See* Md. Code Ann., Com. Law § 13-301(14) (enumerating

Com. Law § 13-301(1). "[T]he MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed.R.Civ.P. 9(b)). The circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citations and internal quotation marks omitted).

Plaintiff alleges in her amended complaint that Wells Fargo misled her into believing that "if she contacted Wells Fargo she would have the opportunity to sell her home or enter into a deed-in-lieu of foreclosure prior to a foreclosure sale." (ECF No. 7 ¶ 35). According to her amended complaint:

> Plaintiff relied on Wells Fargo's representations and attempted to contact Wells Fargo for nearly an entire month about the prospect of selling her home. Plaintiff refrained from taking any other action to avoid foreclosure on the belief that if she contacted Wells Fargo she could arrange a short sale, regular sale or deed-in-lieu of foreclosure.

---

incorporated statutes). Plaintiff has not alleged an MCDCA violation; thus, her MCPA claim premised on an MCDCA violation is not viable.

(*Id.* ¶ 36). Plaintiff asserts that the purported MCPA violations "have caused [her] to endure damages including heavy stress, headaches, stomach aches, sleepless nights, weigh[t] instability, excessive worry and pecuniary expenses." (*Id.* ¶ 39).

Accepting Plaintiff's allegation as true, she does not state an MCPA claim. As is evident by Plaintiff's own allegations, she received a letter from Wells Fargo on September 12, 2014 informing her that: (1) "there *may* be other options available to help [Ms. Pruitt] avoid a foreclosure sale" (*Id.* ¶ 14) (emphasis added); and (2) Plaintiff may contact Ms. Short so that she could "help *explain* the short sale process, guidelines *and [Ms. Pruitt's] eligibility*." (*Id.*) (emphases added). After Plaintiff appealed the denial, she allegedly received another letter from Wells Fargo on October 16, 2014, again informing her of the short sale option and encouraging her to contact Ms. Short promptly. (*Id.* ¶ 16). None of Plaintiff's allegations suggests that anyone from Wells Fargo made any statements that she would be eligible for any of these options. Moreover, none of the allegations plausibly suggests that Wells Fargo's statements had the capacity, tendency, or effect of misleading her.

Furthermore, Plaintiff has not sufficiently pled that she detrimentally relied on any statement by Wells Fargo. At most,

Plaintiff's allegations suggest that she was lulled into a false state of comfort by Wells Fargo's correspondence, but, much like the plaintiffs in *Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 256 (D.Md. 2013), she does not allege that Wells Fargo "specifically directed [her] to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations." Any reliance by Plaintiff on Wells Fargo's letters, which she concedes in her amended complaint did not represent her eligibility for other options to avoid foreclosure, was not reasonable.

As Wells Fargo argues, Plaintiff's allegations regarding damages also are problematic. (ECF No. 8-1, at 9-10). The Maryland Court of Appeals has:

> established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation.

*Lloyd*, 397 Md. at 143. Actual injury or loss under the MCPA includes "emotional distress and mental anguish" provided "there was at least consequential physical injury" in the sense that "the injury for which recovery is sought is capable of objective determination." *Hoffman v. Stamper*, 385 Md. 1, 32 (2005). "Thus, a complaint will adequately plead damages under the MCPA

when it contains plausible allegations that the plaintiff relied upon the defendant's false or misleading statements and suffered actual loss or injury *as a result* of that reliance." *Butler v. Wells Fargo Bank, N.A.*, No. MJG-12-2705, 2013 WL 3816973, at *3 (D.Md. July 22, 2013) (emphasis in original). Plaintiff broadly states that the alleged MCPA violation caused her to suffer pecuniary loss, but it cannot reasonably be inferred from the allegations in the amended complaint that any damages resulted from any deception by Wells Fargo on which she reasonably could have relied. Plaintiff has not pleaded that Wells Fargo's alleged misrepresentations caused her to miss work, lose wages, or forego any actions in connection with her foreclosure proceeding. *Cf. Butler*, 2013 WL 3816973, at *6 (distinguishing cases involving actionable MCPA claims and noting that, in those cases, "the plaintiff had made payments under a TPP agreement or other modified plan, received inconsistent communication from the mortgage services regarding a permanent modification or loan reinstatement, and claimed to have suffered resulting injury in the form of lower credit scores, lost time at work, and emotional distress").

Any attempt by Plaintiff to assert an MCPA claim against Alba is unavailing for the additional reason that Section 13-104 exempts certain professionals and their services from liability under the MCPA, including lawyers, even when they are not acting

in their specific professional capacity.   Md. Code Ann., Com. Law § 13-104(1); *see Robinson v. Fountainhead Title Group Corp.*, 447 F.Supp.2d 478, 490 (D.Md. 2006); *Lewis*, 2014 WL 3845833, at *7; *Butler v. Wells Fargo Bank, N.A.*, No. MJG-12-2705, 2013 WL 145886, at *3 (D.Md. Jan. 11, 2013).   Alba, a law firm, is therefore exempt from liability under the MCPA.

   **C.   Plaintiff's FDCPA Claim**

   Plaintiff asserts an FDCPA claim against Alba only.   The FDCPA, 15 U.S.C. § 1692e, "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct."   *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (citation and internal quotation marks omitted).   To plead a valid FDCPA claim, "a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt[] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"   *Stewart*, 859 F.Supp.2d at 759-60 (quoting *Dikun v. Streich*, 369 F.Supp.2d 781, 784-85 (E.D.Va. 2005)).   The Fourth Circuit has adopted the "least sophisticated debtor" standard to determine if a Section 1692e violation has occurred.   *Nat'l Fin. Servs.*, 98 F.3d at 135-36.   Under this standard, a false statement that would not mislead the "least sophisticated

25

consumer" is not actionable.  The Fourth Circuit also has opined that a false or misleading statement is not actionable under Section 1692e unless it is material.  *Lembach*, 528 F.App'x at 302-03.  In addition, threatening to take any action that cannot legally be taken or that is not intended to be taken violates the FDCPA.  15 U.S.C. § 1692e(5).

In her amended complaint, Plaintiff avers that Alba violated the FDCPA by "[m]isrepresting and/or hiding the amount of the attorney fees and costs that it was attempting to collect regarding the mortgage debt" and "[a]ssesing and/or charging attorney['s] fees and costs for work not performed and costs not incurred or excessive for the work performed and incurred." (ECF No. 7 ¶ 27(a)-(b)).  She alleges that the payoff quote and reinstatement quote include attorney's fees and costs that "are unjust and represent costs not actually incurred or excessive of the true costs."  (*Id.* ¶ 19).  As discussed in relation to Plaintiff's MCDCA claim, *see supra* Part III.A.1, she fails to provide factual support bearing on Defendants' purported misconduct under the statute.  Likewise, Plaintiff's naked allegations simply do not plead a cognizable claim under the FDCPA.

Plaintiff also contends that Alba violated the FDCPA by "[a]ttempting and/or threatening to sell [P]laintiff's property at a foreclosure sale knowing that neither it nor its principals

were in possession of the original promissory note and thus not legally entitled to enforce the note." (*Id.* ¶ 27(c)). Plaintiff further alleges Defendant's liability under the FDCPA by "[m]isrepresenting that the 'holder' of the Note appointed Alba as substitute trustee when Defendants knew they were not in possession of the Note and therefore Alba was not properly appointed trustee and has no legal right to enforce the Deed of Trust." (*Id.* ¶ 27(d)). These arguments are unavailing for the reasons explained above, *see supra* Part III.A.2, as Defendants need not be in possession of the Note to enforce it.

### D.  Plaintiff's TILA Claim

Plaintiff asserts in her amended complaint that JP Morgan violated TILA, 15 U.S.C. § 1641(g)(1), by "failing to notify [] Plaintiff that the ownership of the loan had been transferred to it." (ECF No. 7 ¶ 24).

JP Morgan moved to dismiss on April 14, 2015. (ECF No. 25).  Because Plaintiff failed to file any opposition to the motion, the undersigned has the discretion to dismiss the claim without reaching the merits.  Judge Hollander dismissed the complaint in *White v. Wal-Mart Stores, Inc.*, No. ELH-13-00031, 2014 WL 1369609, at *2 (D.Md. Apr. 4, 2014), where the *pro se* plaintiff failed to oppose the defendant's motion to dismiss. Judge Hollander stated that "[w]hen a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as

27

authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted' in the motion." *Id.* (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *see also Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."). Although the district court also has discretion to decline to "grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit," that is not the case here. *White*, 2014 WL 1369609, at *2 (quoting *United States v. Sasscer*, No. Y-97-3026, 2000 WL 1479154, at *2 n.6 (D.Md. Aug. 25, 2000)). Moreover, a district court "possess[es] the inherent authority . . . to dismiss a lawsuit sua sponte for failure to prosecute." *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962); *White*, 2014 WL 1369609, at *2 ("In light of plaintiff's failure to oppose the [m]otion, I can only assume that plaintiff concedes that her Complaint is deficient for the reasons stated by defendant."). There is no obvious lack of merit in JP Morgan's motion given the allegations contained in Plaintiff's amended complaint, none of which give rise to a cognizable cause of action against JP Morgan.

Accordingly, JP Morgan's motion to dismiss will be granted.

## IV.   Conclusion

For the foregoing reasons, the three motions to dismiss will be granted and a declaratory judgment will be entered in favor of Defendants.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
